IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DEPRIEST WILLIAMS,

    Petitioner,                    No. CIV S-08-2069 JAM DAD P

    vs.

D.K. SISTO,

    Respondent.                <u>FINDINGS & RECOMMENDATIONS</u>

                             /

          Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges the Governor's May 4, 2007 reversal of the December 6, 2006 decision by the California Board of Parole Hearings ("Board") to grant him parole. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be granted.

                            PROCEDURAL BACKGROUND

          Petitioner is confined pursuant to a judgment of conviction entered in the Los Angeles County Superior Court in 1987. (Pet. at 1.) At that time, petitioner was sentenced to fifteen years to life for second degree murder. (<u>Id.</u>)

          On December 6, 2006, the Board found petitioner suitable for release from prison. (Pet., Ex. D.) On May 4, 2007, the Governor reversed the Board's decision. (<u>Id.</u>, Ex. I.)

1

Petitioner challenged the Governor's decision in a petition for writ of habeas corpus filed in the Los Angeles County Superior Court on August 30, 2007. (Id., Ex. J.) That petition was denied in a reasoned decision on October 27, 2007. (Id.) Subsequently, petitioner challenged the Governor's decision to deny him parole in a petition for writ of habeas corpus dated June 9, 2008 filed in the California Court of Appeal for the Second Appellate District. (Answer, Ex. 3.) That petition was summarily denied on June 25, 2008. (Pet., Ex. K.) Petitioner then filed a petition for review, dated June 28, 2008, filed in the California Supreme Court. (Answer, Ex. 5.) That petition was summarily denied on August 20, 2008. (Pet., Ex. L.)

## FACTUAL BACKGROUND

The Governor described the facts of petitioner's offense in his statement reversing the Board's grant of parole as follows:

> On July 20, 1986, DePriest Williams shot and killed Kevin Fletcher. During the early morning hours, Mr. Fletcher and a group of his friends talked loudly and played music outside of Mr. Williams' apartment. Mr. Williams asked the group to turn the music down. When the volume was not lowered, Mr. Williams shot at the group from his kitchen window, striking one person in the foot. The group dispersed, and Mr. Williams went outside and knocked the radio over. Mr. Fletcher approached Mr. Williams regarding the damaged radio. Mr. Williams displayed a handgun, and Mr. Fletcher ran away. Mr. Williams chased him and shot him in the back, killing him.

Pet., Ex. I.

## ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085. Habeas

corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

II. Petitioner's Claim

Petitioner argues that the Governor reversed the Board's decision solely due to the gravity of his commitment offense. (Pet. at 7.) Petitioner contends that the facts of his

commitment offense no longer constitute reliable evidence that he currently poses an unreasonable risk of danger to public safety, and therefore that the Governor's decision was not supported by any relevant, reliable evidence. (Id. at 12-21.)

A. Due Process in the California Parole Context

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. One alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 891, 900 (9th Cir. 2002) (McQuillion I).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution or state laws. Bd. of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." McQuillion I, 306 F.3d at 901 (quoting Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 12 (1979)).

California's parole scheme gives rise to a cognizable liberty interest in release on parole, even for prisoners who have not already been granted a parole date. Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion I, 306 F.3d at 903; see also In re Lawrence, 44 Cal. 4th 1181, 1204, 1210, 1221 (2008). Accordingly, this court must examine whether California provided the constitutionally required procedural safeguards when depriving petitioner of a protected liberty interest and, if not, whether the state courts' conclusion that it did was contrary to or an unreasonable application of clearly established federal law.

1    In this regard, it is clearly established federal law that a parole board's decision
2 deprives a prisoner of due process with respect to his constitutionally protected liberty interest in
3 a parole release date if the Board's decision is not supported by "some evidence in the record."
4 Superintendent v. Hill, 472 U.S. 445, 457 (1985); Irons v. Carey, 505 F.3d 846, 851 (9th Cir.
5 2007); Sass, 461 F.3d at 1128; Biggs, 334 F.3d at 915.  "The 'some evidence' standard is
6 minimally stringent," and a decision will be upheld under that standard if there is any evidence in
7 the record that could support the conclusion reached by the factfinder.  Powell v. Gomez, 33 F.3d
8 39, 40 (9th Cir. 1994) (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)).  See also
9 Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).  However, "the evidence
10 underlying the board's decision must have some indicia of reliability."  Jancsek v. Or. Bd. of
11 Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).  See also Perveler v. Estelle, 974 F.2d 1132, 1134
12 (9th Cir. 1992).  Determining whether the "some evidence" standard is satisfied does not require
13 examination of the entire record, independent assessment of the credibility of witnesses, or the
14 weighing of evidence.  Toussaint, 801 F.2d at 1105.  The question is whether there is any reliable
15 evidence in the record that could support the conclusion reached.  Id.

16    Under California law, the Governor considers the same factors as the Board in
17 determining whether to affirm or reverse the Board's parole decision.  Cal. Const., art. V, § 8(b);
18 see also In re Rosenkrantz, 29 Cal. 4th 616, 660 (2002).  Therefore, the Governor's decision to
19 reverse a parole grant is reviewed under the same procedural due process principles that are used
20 to review challenges to the Board's denial of parole.

21    When assessing whether a state parole board's or governor's decision was
22 supported by "some evidence," the analysis "is framed by the statutes and regulations governing
23 parole suitability determinations in the relevant state."  Irons, 505 F.3d at 851.  Therefore, this
24 court must:

25    look to California law to determine the findings that are necessary
     to deem a prisoner unsuitable for parole, and then must review the
26    record in order to determine whether the state court decision

5

> holding that these findings were supported by "some evidence" in [petitioner's] case constituted an unreasonable application of the "some evidence" principle articulated in Hill.

(Id.)

Under California law, prisoners serving indeterminate prison sentences "may serve up to life in prison, but they become eligible for parole consideration after serving minimum terms of confinement." In re Dannenberg, 34 Cal. 4th 1061, 1078 (2005). The Board normally sets a parole release date one year prior to the inmate's minimum eligible parole release date, and does so "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public." In re Lawrence, 44 Cal. 4th at 1202 (citing California Penal Code § 3041(a)). A release date must be set "unless [the Board] determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ." Cal. Penal Code § 3041(b).

In order to carry out the mandate of § 3041, the Board must determine "whether the inmate poses 'an unreasonable risk of danger to society if released from prison,' and thus whether he or she is suitable for parole." In re Lawrence, 44 Cal. 4th at 1202 (citing California Code Regs., tit. 15, § 2281(a)). In doing so, the Board must consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

Cal. Code Regs., tit. 15, § 2281(b).

/////

6

The regulation identifies circumstances that tend to show suitability or unsuitability for release. Cal. Code Regs., tit. 15, § 2281(c) & (d). The following circumstances have been identified as tending to show that a prisoner is suitable for release: (1) the prisoner has no juvenile record of assaulting others or committing crimes with a potential of personal harm to victims; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has performed acts that tend to indicate the presence of remorse or has given indications that he understands the nature and magnitude of his offense; (4) the prisoner committed his crime as the result of significant stress in his life; (5) the prisoner's criminal behavior resulted from having been victimized by battered women syndrome; (6) the prisoner lacks a significant history of violent crime; (7) the prisoner's present age reduces the probability of recidivism; (8) the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release; and (9) institutional activities indicate an enhanced ability to function within the law upon release. Cal. Code Regs., tit. 15, § 2281(d).

The following circumstances have been identified as tending to indicate unsuitability for release: (1) the prisoner committed the offense in an especially heinous, atrocious, or cruel manner; (2) the prisoner had a previous record of violence; (3) the prisoner has an unstable social history; (4) the prisoner's crime was a sadistic sexual offense; (5) the prisoner had a lengthy history of severe mental problems related to the offense; and (6) the prisoner has engaged in serious misconduct in prison. Cal. Code Regs., tit. 15, § 2281(c). Factors to consider in deciding whether the prisoner's offense was committed in an especially heinous, atrocious, or cruel manner include: (A) multiple victims were attacked, injured, or killed in the same or separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled or mutilated during or after the offense; (D) the offense was carried out in a manner that demonstrated an exceptionally callous disregard for human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the offense. Id. § 2281(c)(1)(A) - (E).

7

The overriding concern in determining parole suitability under California law is public safety. Dannenberg, 34 Cal. 4th at 1086. This "core determination of 'public safety'. . . involves an assessment of an inmates current dangerousness." Lawrence, 44 Cal. 4th at 1205 (emphasis in original). See also Cal. Code Regs. tit. 15, § 2281(a) ("Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.") Accordingly, under California law,

> when a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings.

Lawrence, 44 Cal. 4th at 1212 (citing In re Rosenkrantz, 29 Cal. 4th 616, 658 (2002); Dannenberg, 34 Cal. 4th at 1071; and In re Lee, 143 Cal. App. 4th 1400, 1408 (2006)).

In recent years the Ninth Circuit Court of Appeals has concluded that, given the liberty interest that California prisoners have in their release on parole, a continued reliance upon an unchanging factor to support a finding of unsuitability for parole may, over time, constitute a violation of due process. The court has addressed the issue in three significant cases, each of which will be discussed below.

First, in Biggs, the Ninth Circuit Court of Appeals recognized that a continued reliance on an unchanging factor, such as the circumstances of the offense, to deny parole could at some point result in a due process violation.[1] While the court in Biggs rejected several of the reasons given by the Board for finding the petitioner in that case unsuitable for parole, it upheld three: (1) petitioner's commitment offense involved the murder of a witness; (2) the murder was carried out in a manner exhibiting a callous disregard for the life and suffering of another; and (3) petitioner could benefit from therapy. Biggs, 334 F.3d at 913. However, the court in Biggs

---

[1] That holding has been acknowledged as representing the law of the circuit. Irons, 505 F.3d at 853; Sass, 461 F.3d at 1129.

cautioned that continued reliance solely upon the gravity of the offense of conviction and petitioner's conduct prior to committing that offense in denying parole could, at some point, violate due process. In this regard, the court observed:

> As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole.

Id. at 916. The court in Biggs also stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs. 334 F.3d at 917.

In Sass, the Board found the petitioner unsuitable for parole at his third suitability hearing based on the gravity of his offenses of conviction in combination with his prior offenses. 461 F.3d at 1126. Citing the decision in Biggs, the petitioner in Sass contended that reliance on these unchanging factors to deny him parole violated due process. The court disagreed, concluding that these factors amounted to "some evidence" to support the Board's determination. Id. at 1129. The court provided the following explanation for its holding:

> While upholding an unsuitability determination based on these same factors, we previously acknowledged that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and *could* result in a due process violation." Biggs, 334 F.3d at 917 (emphasis added). Under AEDPA it is not our function to speculate about how future parole hearings could proceed. Cf. id. The evidence of Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision. Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d).

/////

9

Id.

In Irons, the Ninth Circuit sought to harmonize the holdings in Biggs and Sass, stating as follows:

> Because the murder Sass committed was less callous and cruel than the one committed by Irons, and because Sass was likewise denied parole in spite of exemplary conduct in prison and evidence of rehabilitation, our decision in Sass precludes us from accepting Irons' due process argument or otherwise affirming the district court's grant of relief.
>
> We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in Biggs, Sass, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. Biggs, 334 F.3d at 912; Sass, 461 F.3d at 1125. All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.
>
> Furthermore, we note that in Sass and in the case before us there was substantial evidence in the record demonstrating rehabilitation. In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes. Biggs, 334 F.3d at 917.

Irons, 505 F.3d at 853-54.[2]

---

[2] The California Supreme Court has also acknowledged that the aggravated nature of the commitment offense, over time, may fail to provide some evidence that the inmate remains a current threat to public safety. In re Lawrence, 44 Cal. 4th at 1218-20 & n. 20. Additionally, a panel of the Ninth Circuit in Hayward v. Marshall, 512 F.3d 536, 546-47 (9th Cir. 2008), determined that under the "unusual circumstances" of that case the unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society. However, on May 16, 2008, the Court of Appeals decided to rehear

10

B. <u>Analysis</u>

After taking into consideration the Ninth Circuit decisions in <u>Biggs</u>, <u>Sass</u>, and <u>Irons</u>, and for the reasons set forth below, this court concludes that petitioner is entitled to federal habeas relief with respect to his due process challenge to the Governor's May 4, 2007 decision reversing the Board's 2006 decision and denying him parole.

As noted above, on December 6, 2006, the Board found petitioner suitable for parole. (Pet., Ex. D at 164.) The Board held that petitioner's crime was very callous and cowardly, multiple victims were attacked, and that the motive was trivial in relation to the offense. (<u>Id.</u> at 153-54.) The Board noted that petitioner had no juvenile record of assault, but had other juvenile offenses, and came from an unstable background. (<u>Id.</u> at 156.) However, the Board also found as follows. Petitioner had shown stability in his relationships both inside and outside the prison, and he lacked a significant criminal history involving violent crime. (<u>Id.</u> at 156-57.) Petitioner participated in educational programs, self-help programs, and institutional job assignments, and was continuously employed while incarcerated. (<u>Id.</u> at 156.) He earned two vocational certifications and had participated in self-help programs such as stress management, creating a Men's Violence prevention video, and AA and NA. (<u>Id.</u> at 157.) He had no involvement with drugs or alcohol. (<u>Id.</u>) Petitioner committed the crime as a result of significant stress in his life, and that his maturation, growth and advanced age showed that he had a reduced probability of recidivism. (<u>Id.</u>) Petitioner also had realistic plans for release from prison, including a job offer and family support. (<u>Id.</u>) The Board found that despite receiving three 115s, for disobeying a direct order in 1992, for being involved in a fight in 1994, and for "theft of state food" in 2003, and having a minimal record of five 128(a)s, petitioner had shown positive behavior in prison and had received numerous laudatory chronos supporting his exemplary behavior in prison. (<u>Id.</u>) Petitioner showed genuine remorse and maturity, and had

---

that case en banc. <u>Hayward v. Marshall</u>, 527 F.3d 797 (9th Cir. 2008). Therefore, the panel decision in <u>Hayward</u> is no longer citable precedent.

11

the desire to change towards good citizenship.  (Id. at 157-58.)  His parole plans were reasonable and he had marketable skills.  (Id. at 158.)  Petitioner's three most recent psychological reports all supported a finding of suitability for release on parole.  (Id. at 159.)

Despite the Board's assessment, on May 4, 2007, the Governor reversed its decision granting parole.  The Governor explained his decision as follows:

> During his incarceration for the life offense, Mr. Williams was disciplined three times for rule violations, including violations for theft of state food, fighting with another inmate and disobeying a direct order.  He was also counseled five times for minor misconduct, most recently in 1996.
>
> I have considered various positive factors in reviewing whether Mr. Williams is suitable for parole at this time.  Mr. Williams, who entered prison a high school graduate, made efforts to enhance his ability to function within the law upon his release.  He completed vocational training in foreign auto repair work, and he earned a certificate of achievement in mill and cabinetry work.  He held institutional positions in the food services department and the Prison Industry Authority.  He also worked on the trash crew and yard crew, and he worked as a poster.  He availed himself of an array of self-help and therapy, including Alcoholics Anonymous, Narcotics Anonymous, Men's Violence Prevention Program, Insight Anger Management, and Stress Management.
>
> Moreover, Mr. Williams received favorable evaluations from various correctional and mental-health professionals over the years, and he maintains seemingly solid relationships with family.  He also made plans upon his release to live with his sister in Los Angeles County, the county of last legal residence.  Although he has marketable skills, and he appears to be the beneficiary of a trust, he did not secure a job offer in Los Angeles County.  Having a legitimate way to provide financial support for himself immediately upon his release is essential to Mr. Williams success on parole.[3]
>
> Despite the positive factors I considered, the second-degree murder for which Mr. Williams was convicted was especially heinous because he attacked multiple victims.  He also put other people at risk of death or serious bodily injury...

---

[3] This statement by the Governor is contrary to the Board's finding that petitioner had a job offer.  See Pet., Ex. I at 157.  The transcript of the 2006 parole hearing reflects that petitioner had received a letter from the Ex-Offender Action Network stating "It's our intent to help Mr. Williams secure employment and participate in group support meetings.  Under our supervision and mentorship we believe Mr. Williams will have every opportunity to succeed."  Id. at 118.

12

> Furthermore, Mr. Williams [sic] actions–taking out a loaded gun after shooting at a group of people, chasing Mr. Fletcher and shooting him in the back–suggest that he premeditated on some level to kill Mr. Fletcher.  Mr. Williams also had numerous opportunities to cease during the crime...The gravity of the second-degree murder committed by Mr. Williams is alone sufficient for me to conclude presently that his release from prison would pose an unreasonable public-safety risk....
>
> ...given the current record before me, and after carefully considering the very same factors that the Board must consider, I find the gravity of the murder perpetrated by Mr. Williams presently outweighs the positive factors.  Accordingly, because I believe his release from prison would pose an unreasonable risk of danger to society at this time, I REVERSE the Board's 2006 decision to grant parole to Mr. Williams.

Pet., Ex. I.

The Governor's reversal of the Board's decision was reviewed by the Los Angeles County Superior Court in considering the habeas petition filed by petitioner with that court. (Answer, Ex. 3.)  That is the last reasoned state court decision rejecting petitioner's due process claim.  In rejecting petitioner's due process challenge, the Superior Court found that the Governor's reliance on petitioner's commitment offense alone satisfied the "some evidence" standard and that no due process violation had occurred reasoning as follows:

> Here, the Governor reversed the Board of Parole Hearings ("Board") decision to grant the Petitioner parole because of the nature of his commitment offense....The Court finds that there is some evidence to support the Governor's finding that multiple victims were attacked, injured, or killed during the commitment offense....
>
> The Governor also considered the Petitioner's non-violent prior offenses; his recent 115 discipline for stealing state food; and his prior 115 for fighting.  While these factors, alone, may not justify a finding of unsuitability, the Governor may properly consider them.
>
> The Governor also considered the Petitioner's post-conviction gains, however, he still concluded that the Petitioner would pose an unreasonable threat to public safety....The Court finds that there is some evidence to support this determination because multiple victims were attacked, injured, or killed in his commitment offense.  As indicated in *Rosenkrantz, supra*...it is irrelevant that a court might determine that evidence in the record tending to

13

establish suitability for parole, as long as there is some evidence to
support the findings of unsuitability....

(Answer, Ex. 2.)

While the Governor did mention petitioner's disciplinary violations while in prison, his statement reflects that he reversed the Board's decision solely based on the gravity of the crime. (Pet., Ex. I, Indeterminate Sentence Parole Release Review at 2.) ) Specifically, the Governor stated the basis for his decision to deny parole as follows: "The gravity of the second-degree murder committed by Mr. Williams is alone sufficient for me to conclude presently that his release from prison would pose an unreasonable public-safety risk," and "I find the gravity of the murder perpetrated by Mr. Williams presently outweighs the positive factors." (Id.) Reliance on this sole, unchanging factor to reverse the grant of parole violated due process given the record in this case. The state court's decision was contrary to the clearly established federal law discussed above. After taking into consideration the Ninth Circuit decisions in Biggs, Sass, and Irons, and for the reasons set forth below, this court concludes that petitioner is entitled to federal habeas relief with respect to his due process challenge to the Governor's decision to reverse the Board's grant of parole to petitioner.

For the reasons explained by the Board, the circumstances of petitioner's commitment offense alone, when considered in light of the extensive evidence of petitioner's in-prison rehabilitation and exemplary behavior over 20 years in prison, were no longer predictive of his current dangerousness in 2007. In his reversal of the Board's decision to grant parole the Governor articulated no nexus, and this court can find none, between the unchanging circumstances of petitioner's crime of conviction and his dangerousness in 2007. The murder which petitioner was convicted of back in 1986 was not committed in such an especially heinous, atrocious, or cruel manner as to undermine the fact that petitioner's rehabilitative efforts and performance over 20 years in prison demonstrate he no longer would pose a danger to society if released on parole. At the time of the Governor's decision in 2007, petitioner had served more

than the minimum number of years required by his sentence[4] and his record of rehabilitation while imprisoned was exemplary. The time had come when the circumstances of petitioner's commitment offense no longer continued to be predictive of his current dangerousness when considered in light of the other evidence in the record. See Biggs, 334 F.3d at 916-17; Irons, 505 F.3d at 853-54.

In sum, this court concludes that there is insufficient evidence to support the Governor's ultimate conclusion that petitioner would pose an unreasonable risk of danger if released on parole in 2007. The court notes in this regard that petitioner had no history of violent crime; that the killing of the victim was not so calculated and evil as to indicate, without more, that petitioner remained a continuing danger to the public twenty years later as a mature adult; petitioner had effectively participated in rehabilitative and educational programs, earning two vocational certifications, participating in self-help programs, and remaining employed while incarcerated; petitioner has family support; and psychological evaluations opined that he no longer represented a danger to public safety if released on parole in 2007. Applying the federal due process principles expressed in the cases cited above, this court is compelled to conclude that, in light of the period of time that has elapsed since the commitment crime, which far exceeds the minimum term of petitioner's sentence; evidence of petitioner's post-conviction conduct and his rehabilitative efforts and psychological evaluations; and his stable parole plans, there is no competent evidence to support the Governor's 2007 reversal of the Board's grant of parole. Under these circumstances, the decision of the Los Angeles County Superior Court denying habeas relief violated due process.

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be granted.

---

[4] In fact, petitioner had served twenty years on his indeterminate sentence of fifteen years to life in prison. See Irons, 505 F.3d at 853-54.

1    These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 12, 2010.

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:rh
williams2069.hc