IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DEPRIEST WILLIAMS,

   Petitioner,      No. CIV S-08-2069 JAM DAD P

 vs.

D.K. SISTO,

   Respondent.     <u>FINDINGS & RECOMMENDATIONS</u>

_____/

   Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges the Governor's May 4, 2007 reversal of the December 6, 2006 decision by the California Board of Parole Hearings ("Board") to grant him parole. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be granted.

          PROCEDURAL BACKGROUND

   Petitioner is confined pursuant to a judgment of conviction entered in the Los Angeles County Superior Court in 1987 for second degree murder. (Pet. at 1.) At that time, petitioner was sentenced to fifteen years to life in state prison. (<u>Id.</u>)

   On December 6, 2006, the Board found petitioner suitable for release from prison. (Pet., Ex. D.) On May 4, 2007, the Governor reversed the Board's decision. (<u>Id.</u>, Ex. I.)

1

1   Petitioner challenged the Governor's decision in a petition for writ of habeas corpus filed in the
2   Los Angeles County Superior Court on August 30, 2007. (Id., Ex. J.) That petition was denied
3   in a reasoned decision on October 27, 2007. (Id.) Subsequently, petitioner challenged the
4   Governor's decision to deny him parole in a petition for writ of habeas corpus dated June 9, 2008
5   filed in the California Court of Appeal for the Second Appellate District. (Answer, Ex. 3.) That
6   petition was summarily denied on June 25, 2008. (Pet., Ex. K.) Petitioner then filed a petition for
7   review, dated June 28, 2008, in the California Supreme Court. (Answer, Ex. 5.) That petition
8   was summarily denied on August 20, 2008. (Pet., Ex. L.)

FACTUAL BACKGROUND

The Governor described the facts of petitioner's commitment offense in his statement reversing the Board's grant of parole as follows:

> On July 20, 1986, DePriest Williams shot and killed Kevin Fletcher. During the early morning hours, Mr. Fletcher and a group of his friends talked loudly and played music outside of Mr. Williams' apartment. Mr. Williams asked the group to turn the music down. When the volume was not lowered, Mr. Williams shot at the group from his kitchen window, striking one person in the foot. The group dispersed, and Mr. Williams went outside and knocked the radio over. Mr. Fletcher approached Mr. Williams regarding the damaged radio. Mr. Williams displayed a handgun, and Mr. Fletcher ran away. Mr. Williams chased him and shot him in the back, killing him.

Pet., Ex. I.

ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas

2

corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). See also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). See also Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005) ("When more than one state court has adjudicated a claim, we analyze the last reasoned decision"). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque,

475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

II. Petitioner's Claim

Petitioner argues that the Governor reversed the Board's decision to grant him parole solely due to the gravity of his commitment offense.  (Pet. at 7.)  Petitioner contends that the facts of his offense no longer constitute reliable evidence that he currently poses an unreasonable risk of danger to public safety, and therefore that the Governor's decision was not supported by any relevant, reliable evidence.  (Id. at 12-21.)

### A. Due Process in the California Parole Context

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law.  A litigant alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient.  Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 895, 900 (9th Cir. 2002).[1]

---

[1] In the context of parole proceedings, the "full panoply of rights" afforded to criminal defendants is not "constitutionally mandated" under the federal Due Process Clause.  Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).  The United States Supreme Court has held that due process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the reasons for the denial.  Hayward v. Marshall, 603 F.3d 546, 560 (9th Cir. 2010) (en banc) (quoting Greenholtz, 442 U.S. at 16).  See also Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving parole issues).

A protected liberty interest may arise from either the Due Process Clause of the United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005) (citations omitted). See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987). The United States Constitution does not, of its own force, create a protected liberty interest in a parole date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."); see also Hayward v. Marshall, 603 F.3d 546, 561 (9th Cir. 2010) ("[I]n the absence of state law establishing otherwise, there is no federal constitutional requirement that parole be granted in the absence of 'some evidence' of future dangerousness or anything else.") (en banc). However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." McQuillion, 306 F.3d at 901 (quoting Greenholtz, 442 U.S. at 12). See also Allen, 482 U.S. at 376-78; Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) ("The principle that state law gives rise to liberty interests that may be enforced as a matter of federal law is long established."); Hayward, 603 F.3d 562-63 ("Although the Due Process Clause does not, by itself, entitle a prisoner to parole in the absence of some evidence of future dangerousness, state law may supply a predicate for that conclusion.")

In California, a prisoner is entitled to release on parole unless there is "some evidence" of his or her current dangerousness. Hayward, 603 F.3d at 562 (citing In re Lawrence, 44 Cal.4th 1181, 1205-06, 1210 (2008) and In re Shaputis, 44 Cal. 4th 1241 (2008)); Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010), pet. for cert. filed (Sept. 2, 2010) (No. 10-333); Pirtle v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th Cir. 2010) ; In re Rosenkrantz, 29 Cal.4th 616, 651-53 (2002).   Therefore, "California's parole scheme gives rise to a cognizable liberty interest in release on parole." Pirtle, 611 F.3d at 1020 (quoting McQuillion, 306 F.3d at

5

902). This liberty interest is enforceable under the federal Due Process Clause pursuant to clearly established federal law. Haggard v. Curry, 623 F.3d 1035, 1040-41 (9th Cir. 2010); Cooke, 606 F.3d at 1213 (denial of parole to a California prisoner "in the absence of 'some evidence' of current dangerousness . . . violat[es] . . . his federal right to due process."); Pearson, 606 F.3d at 609 (a state parole system that gives rise to a liberty interest in parole release is enforceable under the federal Due Process Clause); Hayward, 603 F.3d at 563; see also Castelan v. Campbell, No. 2:06-cv-01906-MMM, 2010 WL 3834838, at * 2 (E.D. Cal. Sept. 30, 2010) (McKeown, J.) ("In other words, in requiring [federal] habeas courts to review parole denials for compliance with California's 'some evidence' rule, Hayward holds that California state constitutional law creates a cognizable interest in parole absent 'some evidence' of dangerousness, and that the federal Due Process Clause in turn incorporates that right as a matter of clearly established federal law.")

### B. California's Statutes and Regulations on Parole

When a federal court assesses whether a state parole board's suitability determination was supported by "some evidence" in a habeas case, that analysis "is shaped by the state regulatory, statutory, and constitutional law that governs parole suitability determinations in California." Pirtle, 611 F.3d at 1020 (citing Hayward, 603 F.3d at 561-62). The setting of a parole date for a California state prisoner is conditioned on a finding of suitability. Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402. The state regulation that governs parole suitability findings for life prisoners states as follows with regard to the statutory requirement of California Penal Code § 3041(b): "Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code Regs. tit. 15, § 2281(a). In California, the overriding concern in determining parole suitability is public safety. In re Dannenberg, 34 Cal. 4th 1061, 1086 (2005). This "core determination of 'public safety' . . . involves an assessment of an inmates *current* dangerousness." In re Lawrence, 44 Cal. 4th at

6

1205 (emphasis in original). Accordingly,

> when a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings.

Id. at 1212 (citing In re Rosenkrantz, 29 Cal. 4th at 658; In re Dannenberg, 34 Cal. 4th at 1071; and In re Lee, 143 Cal. App.4th 1400, 1408 (2006)). "In short, 'some evidence' of future dangerousness is indeed a state *sine qua non* for denial of parole in California." Pirtle, 611 F.3d at 1021 (quoting Hayward, 603 F.3d at 562). See also Cooke, 606 F.3d at 1214.[2]

Under California law, prisoners serving indeterminate prison sentences "may serve up to life in prison, but they become eligible for parole consideration after serving minimum terms of confinement." In re Dannenberg, 34 Cal. 4th at 1078. The Board normally sets a parole release date one year prior to the inmate's minimum eligible parole release date, and does so "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public." In re Lawrence, 44 Cal. 4th at 1202 (citing Cal. Penal Code § 3041(a)). A release date must be set "unless [the Board] determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ." Cal. Penal Code § 3041(b). In determining whether an inmate is suitable for parole, the Board must

---

[2] As the Ninth Circuit has explained, the "some evidence"

> requirement imposes substantive rather than purely procedural constraints on state officials' discretion to grant or deny parole: "a reviewing court . . . is not bound to affirm a parole decision merely because the Board or the Governor has adhered to all procedural safeguards." In re Lawrence, 44 Cal.4th [at 1210]. Rather the court must ensure that the decision to deny parole is "supported by some evidence, not merely by a hunch or intuition." Id. [at 1212].

Cooke, 606 F.3d at 1213-14.

7

consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

Cal. Code Regs., tit. 15, § 2281(b).  However, "there must be more than the crime or its circumstances alone to justify the Board's or the Governor's finding of current dangerousness." Cooke, 606 F.3d at 1214.  See also Lawrence, 44 Cal. 4th at 1211 ("But the statutory and regulatory mandate to normally grant parole to life prisoners who have committed murder means that, particularly after these prisoners have served their suggested base terms, the underlying circumstances of the commitment offense alone rarely will provide a valid basis for denying parole when there is strong evidence of rehabilitation and no other evidence of current dangerousness.")

The regulation identifies circumstances that tend to show suitability or unsuitability for release.  Cal. Code Regs., tit. 15, § 2281(c) & (d).  The following circumstances are identified as tending to show that a prisoner is suitable for release:  the prisoner has no juvenile record of assaulting others or committing crimes with a potential of personal harm to victims; the prisoner has experienced reasonably stable relationships with others; the prisoner has performed acts that tend to indicate the presence of remorse or has given indications that he understands the nature and magnitude of his offense; the prisoner committed his crime as the result of significant stress in his life; the prisoner's criminal behavior resulted from having been victimized by battered women syndrome; the prisoner lacks a significant history of violent crime; the prisoner's present age reduces the probability of recidivism; the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release; institutional activities indicate an enhanced ability to function within the law upon release.  Id., §

2281(d).

The following circumstances are identified as tending to indicate unsuitability for release: the prisoner committed the offense in an especially heinous, atrocious, or cruel manner; the prisoner had a previous record of violence; the prisoner has an unstable social history; the prisoner's crime was a sadistic sexual offense; the prisoner had a lengthy history of severe mental problems related to the offense; the prisoner has engaged in serious misconduct in prison. Id., § 2281(c). Factors to consider in deciding whether the prisoner's offense was committed in an especially heinous, atrocious, or cruel manner include: multiple victims were attacked, injured, or killed in the same or separate incidents; the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; the victim was abused, defiled or mutilated during or after the offense; the offense was carried out in a manner that demonstrated an exceptionally callous disregard for human suffering; the motive for the crime is inexplicable or very trivial in relation to the offense. Id., § 2281(c)(1)(A) - (E).

In the end, under state law as clarified by the California Supreme Court,

> the determination whether an inmate poses a current danger is not dependent upon whether his or her commitment offense is more or less egregious than other, similar crimes. (*Dannenberg, supra*, 34 Cal. 4th at pp 1083-84 [parallel citations omitted].) Nor is it dependent solely upon whether the circumstances of the offense exhibit viciousness above the minimum elements required for conviction of that offense. Rather, the relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude. [citations omitted].

In re Lawrence, 44 Cal. 4th at 1221. See also In re Shaputis, 44 Cal. 4th at 154-55.

In this federal habeas action challenging the denial of release on parole it is the court's task to determine "whether the California judicial decision approving the governor's decision rejecting parole was an 'unreasonable application' of the California 'some evidence'

9

1  requirement, or was 'based on an unreasonable determination of the facts in light of the
2  evidence.'"  Hayward, 603 F.3d at 563.  See also Pearson, 606 F.3d at 609 ("Hayward
3  specifically commands federal courts to examine the reasonableness of the state court's
4  determination of facts in light of the evidence."); Cooke, 606 F.3d at 1213.  Accordingly, below
5  the court considers whether the Governor's decision to deny parole in this case constituted an
6  unreasonable application of the "some evidence" rule.

        C.  Analysis

8          After taking into consideration the applicable law, and for the reasons set forth
9  below, this court concludes that petitioner is entitled to federal habeas relief with respect to his
10 due process challenge to the Governor's May 4, 2007 decision to deny him parole by reversing
11 the Board's 2006 decision.

12         As noted above, on December 6, 2006, the Board found petitioner suitable for
13 release on parole.  (Pet., Ex. D at 164.)  In doing so, the Board observed that petitioner's crime
14 was very callous and cowardly, multiple victims were attacked, and that the motive was trivial in
15 relation to the offense.  (Id. at 153-54.)  The Board noted that petitioner had no juvenile record of
16 assault, but had other juvenile offenses, and came from an unstable background.  (Id. at 156.)
17 However, the Board also found as follows.  Petitioner had shown stability in his relationships
18 both inside and outside of prison, and he lacked a significant criminal history involving violent
19 crime.  (Id. at 156-57.)  Petitioner had participated in educational programs, self-help programs,
20 and institutional job assignments, and was continuously employed while incarcerated.  (Id. at
21 156.)  He earned two vocational certifications and had participated in self-help programs such as
22 stress management, creating a Men's Violence prevention video, and AA and NA.  (Id. at 157.)
23 Petitioner had no involvement with drugs or alcohol.  (Id.)  He committed the commitment
24 offense as a result of significant stress in his life, and his maturation, growth and advanced age
25 showed that he had a reduced probability of recidivism.  (Id.)  Petitioner also presented realistic
26 plans for release from prison, including a job offer and family support.  (Id.)  The Board found

that despite receiving three CDC 115's[3], for disobeying a direct order in 1992, for being involved in a fight in 1994, and for "theft of state food" in 2003, and having a minimal record of five 128(a)'s[4], petitioner had shown positive behavior in prison and had received numerous laudatory chronos supporting his exemplary behavior while confined. (Id.) Petitioner was found to have shown genuine remorse and maturity, with a desire to change towards good citizenship. (Id. at 157-58.) As noted, his parole plans were deemed reasonable and he had marketable skills. (Id. at 158.) Moreover, petitioner's three most recent psychological reports all supported a finding of suitability for release on parole. (Id. at 159.)

Despite the Board's assessment, on May 4, 2007, the Governor reversed its decision granting parole. The Governor explained his decision as follows:

> During his incarceration for the life offense, Mr. Williams was disciplined three times for rule violations, including violations for theft of state food, fighting with another inmate and disobeying a direct order. He was also counseled five times for minor misconduct, most recently in 1996.
>
> I have considered various positive factors in reviewing whether Mr. Williams is suitable for parole at this time. Mr. Williams, who entered prison a high school graduate, made efforts to enhance his ability to function within the law upon his release. He completed vocational training in foreign auto repair work, and he earned a certificate of achievement in mill and cabinetry work. He held institutional positions in the food services department and the Prison Industry Authority. He also worked on the trash crew and yard crew, and he worked as a poster. He availed himself of an array of self-help and therapy, including Alcoholics Anonymous, Narcotics Anonymous, Men's Violence Prevention Program, Insight Anger Management, and Stress Management.
>
> Moreover, Mr. Williams received favorable evaluations from various correctional and mental-health professionals over the years, and he maintains seemingly solid relationships with family. He also made plans upon his release to live with his sister in Los

---

[3] A California Department of Corrections Form 115 "Rules Violation Report" documents misconduct "believed to be a violation of law or [that] is not minor in nature." (Cal. Code Regs., tit. 15, § 3312(a)(3)).

[4] A California Department of Corrections Form 128(a) documents misconduct while imprisoned that is more minor in nature.

11

> Angeles County, the county of last legal residence. Although he has marketable skills, and he appears to be the beneficiary of a trust, he did not secure a job offer in Los Angeles County. Having a legitimate way to provide financial support for himself immediately upon his release is essential to Mr. Williams success on parole.[5]
>
> Despite the positive factors I considered, the second-degree murder for which Mr. Williams was convicted was especially heinous because he attacked multiple victims. He also put other people at risk of death or serious bodily injury. . .
>
> Furthermore, Mr. Williams [sic] actions – taking out a loaded gun after shooting at a group of people, chasing Mr. Fletcher and shooting him in the back – suggest that he premeditated on some level to kill Mr. Fletcher. Mr. Williams also had numerous opportunities to cease during the crime . . . The gravity of the second-degree murder committed by Mr. Williams is alone sufficient for me to conclude presently that his release from prison would pose an unreasonable public-safety risk . . . .
>
> . . . given the current record before me, and after carefully considering the very same factors that the Board must consider, I find the gravity of the murder perpetrated by Mr. Williams presently outweighs the positive factors. Accordingly, because I believe his release from prison would pose an unreasonable risk of danger to society at this time, I REVERSE the Board's 2006 decision to grant parole to Mr. Williams.

(Pet., Ex. I.)

The Governor's reversal of the Board's decision was reviewed by the Los Angeles County Superior Court in considering the habeas petition filed by petitioner with that court. (Answer, Ex. 3.) That is the last reasoned state court decision rejecting petitioner's due process claim. In rejecting petitioner's due process challenge to the 2007 denial of parole, the Superior Court found that the Governor's reliance on petitioner's commitment offense alone satisfied the "some evidence" standard and that no due process violation had occurred, reasoning as follows:

---

[5] This statement by the Governor is contrary to the Board's finding that petitioner had a job offer. (See Pet., Ex. I at 157.) The transcript of the 2006 parole hearing reflects that petitioner had received a letter from the Ex-Offender Action Network stating "It's our intent to help Mr. Williams secure employment and participate in group support meetings. Under our supervision and mentorship we believe Mr. Williams will have every opportunity to succeed." Id. at 118.

12

1   Here, the Governor reversed the Board of Parole Hearings
    ("Board") decision to grant the Petitioner parole because of the
2   nature of his commitment offense . . . .  The Court finds that there
    is some evidence to support the Governor's finding that multiple
3   victims were attacked, injured, or killed during the commitment
    offense . . . .
4
    The Governor also considered the Petitioner's non-violent prior
5   offenses; his recent 115 discipline for stealing state food; and his
    prior 115 for fighting.  While these factors, alone, may not justify a
6   finding of unsuitability, the Governor may properly consider them.

7   The Governor also considered the Petitioner's post-conviction
    gains, however, he still concluded that the Petitioner would pose an
8   unreasonable threat to public safety. . . .  The Court finds that there
    is some evidence to support this determination because multiple
9   victims were attacked, injured, or killed in his commitment
    offense.  As indicated in *Rosenkrantz*, *supra* . . . it is irrelevant that
10  a court might determine that evidence in the record tending to
    establish suitability for parole, as long as there is some evidence to
11  support the findings of unsuitability . . . .

12  (Answer, Ex. 2.)

13          While in rendering his decision the Governor did mention petitioner's prison

14  disciplinary violations, the Governor's statement reflects that he reversed the Board's decision

15  solely based on the gravity of petitioner's crime.  (Pet., Ex. I, Indeterminate Sentence Parole

16  Release Review at 2.) )  Specifically, the Governor stated the basis for his decision to deny parole

17  as follows: "The gravity of the second-degree murder committed by Mr. Williams is alone

18  sufficient for me to conclude presently that his release from prison would pose an unreasonable

19  public-safety risk," and "I find the gravity of the murder perpetrated by Mr. Williams presently

20  outweighs the positive factors."  (Id.)  Reliance on this sole, unchanging factor to reverse the

21  Board's grant of parole violated due process given the record in this case.  The state court's

22  decision upholding the Governor's reversal was contrary to the clearly established federal law

23  discussed above.

24          For the reasons explained by the Board, the circumstances of petitioner's

25  commitment offense alone, when considered in light of the extensive evidence of petitioner's

26  in-prison rehabilitation and exemplary behavior over his twenty years in prison, were no longer

13

predictive of his current dangerousness in 2007. In his reversal of the Board's decision to grant parole the Governor articulated no nexus, and this court can find none, between the unchanging circumstances of petitioner's crime of conviction and his dangerousness in 2007. The murder which petitioner was convicted of back in 1986 was not committed in such an especially heinous, atrocious, or cruel manner as to undermine the fact that petitioner's rehabilitative efforts and performance over twenty years in prison demonstrate he no longer would pose a danger to society if released on parole. At the time of the Governor's decision in 2007, petitioner had served more than the minimum number of years required by his sentence[6] and his record of rehabilitation while imprisoned was exemplary. The circumstances of petitioner's commitment offense no longer continued to be predictive of his current dangerousness when considered in light of the other evidence in the record.

        In sum, this court concludes that there is insufficient evidence to support the Governor's ultimate conclusion that petitioner would pose an unreasonable risk of danger if released on parole in 2007. The court notes in this regard, as did the Board, that petitioner had no history of violent crime; that the killing of the victim was not so calculated and evil as to indicate, without more, that petitioner remained a continuing danger to the public twenty years later as a mature adult; petitioner had effectively participated in rehabilitative and educational programs, earning two vocational certifications, participating in self-help programs, and remaining employed while incarcerated; petitioner has family support; and psychological evaluations repeatedly opined that he no longer represented a danger to public safety if released on parole.

        Applying the due process principles expressed in the cases discussed above, this court is compelled to conclude that, in light of the period of time that has elapsed since petitioner's commitment offense, which far exceeds the minimum term of the sentence imposed;

---

[6] In fact, petitioner had served twenty years on his indeterminate sentence of fifteen years to life in state prison.

evidence of petitioner's post-conviction conduct and his rehabilitative efforts and psychological evaluations; and his stable parole plans, there is no competent evidence to support the Governor's 2007 reversal of the Board's grant of parole. Under these circumstances, the decision of the Los Angeles County Superior Court denying habeas relief was an unreasonable application of the California "some evidence" requirement. See Hayward, 603 F.3d at 563; Pearson, 606 F.3d at 609; Cooke, 606 F.3d at 1213.

## PROPER REMEDY

Having determined that the state court's decision approving the Governor's reversal of the Board's parole grant in this case was an unreasonable application of the California "some evidence" standard, this court turns to consider the appropriate remedy. The California Supreme Court has held that under the California Constitution, only the executive branch has the authority to make parole-suitability determinations. In re Prather, 50 Cal. 4th 238, 253 (2010). The court concluded that to avoid infringing on executive branch authority, a proper order granting habeas relief where the "some evidence" requirement was not properly applied should require the Board to "proceed in accordance with due process of law" and not "direct the Board to reach a particular result or consider only a limited category of evidence in making the parole suitability determination." Id. In turn, the Ninth Circuit Court of Appeals has concluded, in light of the duty of the federal courts to enforce liberty interests as they are defined by state law, that a federal habeas court may not grant a remedy in excess of that determined to be adequate to address a due process violation under California law by the high court of that state. Haggard v. Curry, 623 F.3d 1035, 1041-43 (9th Cir. 2010).

However, where as here it is the Governor's determination that is found to be unsupported by evidence of current dangerousness, no further parole suitability determination is necessary. In re McDonald, 189 Cal. App.4th 1008, ___, 2010 WL 4296703, at *10 (Cal. App. 2 Dist. Nov. 2 2010) ("[R]emand to the Governor after his determination is found lacking in some evidence of current dangerousness . . . is not required by Prather."); In re Twinn, ___Cal. App.

15

4th___,___, 2010 WL 4723782, at *17-18 (Cal. App. 2 Dist. Nov. 23, 2010) (same); see also In re Lawrence, 44 Cal. 4th at 1190 ("[T]he Court of Appeal . . . issued a writ vacating the Governor's reversal and reinstating the Board's 2005 grant of parole release to petitioner."); Mosley v. Oroski, Nos. 08-15327 and 08-15389, Memorandum at 4-5 (9th Cir. Nov. 24, 2010) ("[W]e believe the appropriate relief in California is to vacate the Governor's decision and reinstate the Board's decision.").[7]  As the California Court of Appeal has explained:

> The limitation that had been imposed on the Board's review in Prather, and in earlier cases, infringed the authority of the Executive Branch to make the necessary parole determinations; the Court held this was a violation of the separation of powers established by the Constitution (Cal. Const., art. III, § 3). ( Prather, supra, 50 Cal.4th at p. 253, 112 Cal. Rptr.3d 291, 234 P.3d 541.) Here, in contrast, we reinstate an earlier Executive Branch decision - made by the Board - overturning only the "veto" of that decision by the Governor. (See id. at p. 251, 112 Cal. Rptr.3d 291, 234 P.3d 541.)  The power of the Executive Branch is, in this instance, not infringed, but respected.
>
> Unlike the Board, which has the obligation and ability to take evidence, consistent with due process protections, the Governor cannot create an evidentiary record.  A return to the Governor for reconsideration would therefore mean that the Governor could look again only at the record before him on initial consideration, the same record this court has reviewed.  We have reviewed that record, and neither the Governor, nor the Board, has the authority to " 'disregard a judicial determination regarding the sufficiency of the evidence [of current dangerousness] and to simply repeat the same decision on the same record.' " Prather, supra, 50 Cal.4th at p. 258, 112 Cal. Rptr.3d 291, 234 P.3d 541, quoting In re Masoner (2009) 172 Cal. App.4th 1098, 1110, 91 Cal. Rptr.3d 689.)

In re McDonald, 2010 WL 4296703, at *9.  See also In re Twinn, 2010 WL 4723782, at *17-18.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus be granted;

2. The Governor's decision denying parole be vacated and the Board's decision finding petitioner suitable for release on parole be reinstated; and

---

[7] Citation of this unpublished disposition by the Ninth Circuit Court of Appeals is appropriate pursuant to Fed. R. App. P. 32.1 and U.S. Ct. of App. 9th Cir. Rule 36-3(b).

3. Respondent be directed to release petitioner.[8]

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

In any objections he elects to file, petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant); Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (en banc) (prisoners are required to obtain a certificate of appealability to review the denial of a habeas petition challenging an administrative decision such as the denial of parole by the parole board).

DATED: December 14, 2010.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:rh/du
williams2069.hc2

---

[8] The Board, of course, retains its authority under California Penal Code §§ 3041.5, 3041.7 to rescind a parole determination based on events occurring after its suitability determination. See Mosley v. Oroski, Nos. 08-15327 and 08-15389, Memorandum at 5 n. 4 (9th Cir. Nov. 24, 2010) (citing In re Moses, 182 Cal. App. 4th 1279, 1315 n. 15 (2010)).